IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **DAVID JERNIGAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:22-cv-00051 |
| | § | |
| | § | **JURY DEMANDED** |
| | § | |
| **CITY OF RENO, TEXAS** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff David Jernigan hereby files this, his Original Complaint, against Defendant City of Reno, Texas for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I.   PARTIES, JURISDICTION AND VENUE

1. Plaintiff David Jernigan ("Plaintiff" or "Jernigan") is currently a citizen and resident of Paris, Texas.

2. Defendant City of Reno, Texas ("Defendant" or "CITY OF RENO") located in Lamar County, Texas and may be served with process through its Mayor, Bart Jetton at 160 Blackburn Street, Reno, TX 75462.

3. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. The acts alleged herein occurred in Lamar County, Texas.

### II.   ADMINISTRATIVE REMEDIES EXHAUSTED

5. Plaintiff timely filed a charge with the EEOC alleging violations of the ADA by

CITY OF RENO. Prior to institution of this lawsuit, the EEOC issued a right to sue letter less than 90 days prior to the filing of this Complaint. All conditions precedent to the institution of this lawsuit have been fulfilled.

### III.   FACTUAL BACKGROUND

6.   Plaintiff was formerly a police Lieutenant at the Reno Police Department in Lamar County, Texas. Plaintiff's problems regarding his employment began on January 15, 2020, when he was injured on the job pursuing a suspect on the second floor of a hotel and was pulled down from the stairs and injured his head, his upper arm and broke his finger.

7.   After this incident happened, Plaintiff was placed on light duty by his physician. However, Plaintiff was told by chief of police Jeremy Massey that there was no light duty at the police department. Thereafter Plaintiff was assigned the duties of janitorial work around the city which included cleaning bathrooms, sweeping, mopping and other duties. Plaintiff also did work at the cemetery and the park, picking up trash and other debris.

8.   After Plaintiff was released to go back to full duty, he had many of his duties taken away by the chief of police Jeremy Massey.  On June 9, 2021, Plaintiff re-injured his upper right arm (weapon side) during a lift assist call where he had to pick up a large male subject out of the floor (assisted by a Lamar County Deputy Jonathan Huff). Plaintiff told the deputy after the call that he felt like he hurt his arm. Plaintiff, then, contacted Chief Massey about the issue and continued his assigned shift.

9.   After that, Plaintiff went to Salas Minor Emergency to start a workman comp claim. Plaintiff's physician put him on restricted duty at that time. When Plaintiff reported the new injury to Chief Massey about the findings, he appeared to get very upset with Plaintiff.

10.   Chief Massey did allow Plaintiff to conduct Code Enforcement reports throughout the city. After the reports were submitted, Plaintiff was not given any other task to do with police

work. Plaintiff again was sent to start doing odd tasks around the city buildings.

11. Plaintiff was referred to orthopedics for his injury and met with Dr. Michael Elliot on Tuesday, June 15, 2021. Plaintiff was sent by Elliot to have an MRI. At that time, the doctor thought that Plaintiff might have a torn bicep near the elbow. When Plaintiff went back to speak to Chief Massey to again tell him about his possible diagnosis, Massey again became very upset and wanted to know why nothing had been confirmed. Plaintiff had the MRI completed at Paris Regional Medical Center on June 25, 2021. The MRI took several hours from 9:30 to 12:00. Plaintiff later came back to the office after his lunch break, and Massey was again irritated with him. Plaintiff began to tell the Chief about the MRI because he felt like the Chief was waiting for him to explain why he was gone for so long with the MRI. As Plaintiff explained some issues with the MRI camera, the Chief began to turn red and appeared mad as he had in the past.

12. Near this same time, a new officer was hired by the police department due to the department being short-handed. For the first time since he was appointed lieutenant of the department Plaintiff was only allowed to do the background investigation of the new officer but was not told about an interview of the officer and Plaintiff was not brought into the hiring process as he had been in the past.

13. On June 28, 2021, Plaintiff had a follow-up with Dr. Elliot with MRI results. Plaintiff was told he would be out 4-6 weeks to do physical therapy. Plaintiff was uneasy to speak with Chief Massey about the findings and told him in front of the police department secretary Hilary McNeal. Chief Massey became really quiet and turned red and began tapping his fingers on the desk. He asked Plaintiff where a form was from the doctor with his restrictions, and Plaintiff advised that it would be sent to the city secretary later. When Plaintiff told Chief Massey this information, he became upset again and made the remark "Well we can't have you just piddling around here" and "when he hurt his knee once the Dr gave him a brace, and he went back to work."

14. Due to the fact that Plaintiff had not been afforded any accommodation for his disclosed disabilities and the refusal of the City/Chief Massey to allow him to perform police duties and the treatment he received from the Chief, Plaintiff filed a charge of discrimination with the EEOC on July 2, 2021, alleging violation of his rights under the Americans with Disabilities. Thereafter, Plaintiff was terminated by the City on August 29, 2021, which he alleges was in retaliation for his filing of a charge of discrimination.

### IV. CAUSE OF ACTION

### AMERICANS WITH DISABILITIES ACT

15. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 14 as if fully stated herein.

16. At all times, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2). More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such an impairment, and/or was regarded by CITY OF RENO as having such an impairment.

17. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job with CITY OF RENO.

18. CITY OF RENO terminated Plaintiff from his position because of his actual or perceived disability in violation of the ADA and/or in retaliation for his filing of a charge of discrimination with the EEOC.

19. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an individual with a disability within the meaning of the ADA.

20. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

21. The unlawful employment practices described above were intentional and were committed with malice or with reckless indifference to the federally protected civil rights of Plaintiff.

## V.  DAMAGES

22. As a direct and proximate result of CITY OF RENO's discrimination on the basis of disability and violation of the ADA Plaintiff has suffered lost wages and benefits and lost employment opportunities.

23. Defendant's denial of employment to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

24. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

25. Plaintiff is entitled to recover his reasonable and necessary attorney's fees pursuant to 42 U.S.C. § 2000e.

## VI.  JURY DEMAND

26. Plaintiff requests trial by jury on all claims.

## VII.  PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Judgment against Defendant for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), in amount to be determined;

b. Judgment against Defendant for Plaintiff's compensatory damages in an amount to be determined;

c. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

d. Costs of suit, including attorney's fees;

e. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Phone/Facsimile
bhommel@hommelfirm.com

ATTORNEY FOR PLAINTIFF